```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
Maureen McNamara,                                         :
                                                          :
                    Plaintiff,                            :
                                                          :
          -against-                                       :
                                                          :         MEMORANDUM & ORDER
Judith Kaye, Chief Judge, New York Court of               :         06-CV-5169 (DLI) (CLP)
Appeals; A. Gail Prudenti, Presiding Justice,             :
Appellate Division of the N.Y.S. Supreme Court,           :
Second Department; Grievance Committee,                   :
9th Judicial District; Gloria Bunze; Gary L. Casella;     :
"John Doe"; "Jane Roe"; The State of New York,            :
                                                          :
                    Defendants.                           :
----------------------------------------------------------------x
```
**DORA L. IRIZARRY, U.S. District Judge:**

In this lawsuit, plaintiff Maureen McNamara, an attorney, alleges a panoply of federal violations arising out of her suspension from, and subsequent reinstatement to, the practice of law in New York State. Plaintiff seeks damages as well as declaratory and injunctive relief. Plaintiff names as defendants a variety of individuals and entities connected with the New York State Court of Appeals ("Court of Appeals"), the Appellate Division of the Supreme Court of the State of New York, Second Judicial Department ("Second Department"), and the Grievance Committee for the Ninth Judicial District ("Grievance Committee"). Defendants move to dismiss the complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure on the grounds that the court lacks jurisdiction to consider plaintiff's claims and, in the alternative, that plaintiff has failed to state any claims for which relief can be granted. For the reasons set forth below, defendants' motion is granted in its entirety and the complaint is dismissed.

**I.     Background**

Unless otherwise noted, the following facts are taken from plaintiff's complaint. Plaintiff was admitted to the practice of law in New York State in 1979. In 1998, while working as a solo practitioner, plaintiff began to experience the first symptoms of multiple sclerosis, a disease of the central nervous system that disrupts communication between the brain and other parts of the body.[1] Plaintiff states that her present "physical limitations with [multiple sclerosis] include, among other things, very limited ability to walk, limited strength and dexterity of arms and hands, and sometimes extreme fatigue, drowsiness, sleepiness and exhaustion." (Compl. ¶ 28.)

The disciplinary problems underlying this litigation began in early 2001, when two complaints against plaintiff were filed with the Grievance Committee. Both complaints, one filed by another attorney and one filed by a client, alleged that plaintiff had neglected client matters and had failed to return phone calls or other communications regarding those matters. As detailed in the decision of the Second Department dated February 3, 2003, the underlying facts of which plaintiff does not contest, the Grievance Committee then launched an investigation with which plaintiff failed to cooperate. *See In re McNamara*, 303 A.D.2d 129 (2d Dep't 2003).

On October 10, 2001, the Grievance Committee filed a petition with the Second Department that, as amended, contained two charges of professional misconduct accusing plaintiff of engaging in conduct adversely reflecting on her fitness as a lawyer by failing to cooperate with an investigation of the Grievance Committee in violation of Disciplinary Rule 1-102(a)(7) of the New York Code of Professional Responsibility. *Id*. at 130, 134. After receiving an extension until October 29, 2001 to file her answering papers and a supplemental affirmation,

---
[1] *See* National Institutes for Health, National Institute of Neurological Disorders and Stroke, NINDS Multiple Sclerosis Information Page (2008), http://www.ninds.nih.gov/disorders/multiple_sclerosis/.

plaintiff delivered the materials to the Grievance Committee on October 30, 2001. In an order dated December 31, 2001, the Second Department authorized the charges against plaintiff and appointed a Special Referee, who held a hearing on the charges in early 2002. Plaintiff submitted proposed findings to the Special Referee, as did Gloria Bunze, a lawyer for the Grievance Committee. The Special Referee adopted the proposed findings of Ms. Bunze and sustained the charges against plaintiff.

In an order dated February 3, 2003, the Second Department confirmed the report of the Special Referee and ordered that plaintiff be:

> [S]uspended from the practice of law for a period of one year, commencing March 5, 2003, and continuing until the further order of this Court, with leave to the respondent to apply for reinstatement no sooner than six months prior to the expiration of the said period of one year upon furnishing satisfactory proof that during the said period she (a) refrained from practicing or attempting to practice law, (b) has fully complied with this order and with the terms and provisions of the written rules governing the conduct of disbarred, suspended, and resigned attorneys (*see* 22 NYCRR 691.10), and (c) has otherwise properly conducted herself . . .

*Id.* at 135-35. Although the Second Department allowed plaintiff to submit written objections to the Special Referee's report, it did not allow her an opportunity for oral argument. The Second Department denied plaintiff's request for reconsideration of its order. In an order dated September 23, 2003, the Court of Appeals denied plaintiff leave to appeal the Second Department's order "upon the ground that such order does not finally determine the proceeding within the meaning of the Constitution." *In re McNamara*, 100 N.Y.2d 613 (2003).

In April 2004, fourteen months after the issuance of the Second Department's order suspending her from the practice of law, plaintiff moved for reinstatement. Plaintiff states that side effects she was experiencing from chemotherapy treatment prevented her from applying for reinstatement during her first eight months of eligibility. In an order dated June 9, 2004, the

3

Second Department held plaintiff's motion in abeyance and referred her petition for reinstatement to the Committee on Character and Fitness ("CCF") "to investigate and report on [plaintiff]'s current fitness to be an attorney, including, but not limited to, the unsatisfied judgments against her and whether she properly notified her clients of her suspension by certified mail, return receipt requested, as required by this court's rules." (Abramowitz Aff., Ex. D.) After an investigation and a personal interview, the CCF prepared a report recommending plaintiff's reinstatement, which it submitted to the Appellate Division on March 14, 2005.

By order dated April 27, 2005, the Second Department ordered that plaintiff's application be referred back to the CCF so that it could gather additional evidence regarding plaintiff's fitness to be an attorney. Specifically, the court directed the CCF to collect:

> (1) detailed information and documentation regarding the status of judgments against [plaintiff], actions for recovery of monies due, and/or outstanding debts of [plaintiff]; (2) detailed information and documentation regarding the taxpayer actions in which [plaintiff] has been included as a plaintiff; and (3) detailed information and documentation regarding the malpractice lawsuit commenced by [plaintiff] against Adam Peska.

(*Id*. at Ex. E.) After conducting an investigation and a hearing, the CCF again recommended plaintiff's reinstatement. Plaintiff states that she never received copies of any of the CCF's reports. In a decision dated January 19, 2006, the Second Department denied plaintiff's motion for reinstatement, finding that plaintiff "does not demonstrate the requisite fitness and character to practice law." (*Id*. at Ex. F.) The Second Department's decision gave no other explanation for the denial of plaintiff's motion.

Plaintiff moved the Second Department for reconsideration and reargument, but this request was denied in an order dated August 18, 2006. The Court of Appeals, *sua sponte*, dismissed plaintiff's appeal as of right on finality grounds in a decision dated November 21, 2006. *In re McNamara*, 7 N.Y.3d 899 (2006). Plaintiff then sought leave to file a discretionary

4

appeal and asked the court to reconsider its earlier dismissal. In a decision dated February 20, 2007, the Court of Appeals granted plaintiff's motion for reconsideration, but denied plaintiff's motion for leave to appeal and dismissed her appeal, finding "that no substantial constitutional question [was] directly involved," *In re McNamara*, 8 N.Y.3d 867 (2007). According to plaintiff, she "also petitioned the Court of Appeals for redress in its ministerial/regulatory capacity, as the branch of state government superintending the licensing of attorneys at law in New York State," but the Court of Appeals took no action on this application. (Compl. ¶ 145.) On April 27, 2007, plaintiff again applied to the Second Department for reinstatement. On May 21, 2007, plaintiff filed a petition for a writ of certiorari with the Supreme Court of the United States, which was denied on October 1, 2007. *McNamara v. Appellate Division, Supreme Court of New York, Second Judicial Department*, 128 S. Ct. 360 (2007). By order dated June 8, 2007, the Second Department, without explanation, reinstated plaintiff to the practice of law.

Plaintiff filed an amended complaint in this action on June 21, 2007, raising eight causes of action that may be summarized as follows:

(1)  The judicial officers and staff of the Court of Appeals and the Second Department violated 42 U.S.C. § 1983 by failing to provide plaintiff with due process in connection with her suspension and attempts at reinstatement;

(2)  The New York State courts violated plaintiff's substantive due process rights by "irrational[ly], arbitrar[ily], and capricious[ly]" extending plaintiff's one-year suspension into a suspension that lasted for more than three years. Plaintiff also alleges in this cause of action, *inter alia*, that her continued suspension amounted to an unconstitutional taking of property;

(3)  Plaintiff was denied equal protection under law because, *inter alia*, (a) the Second Department's procedures for disciplining attorneys are inferior to those of the other judicial departments, (b) the Second Department treated plaintiff less favorably than it did Albert Pirro, a high profile male attorney who had been convicted of felony tax evasion, (c) the Grievance Committee and its staff singled out plaintiff for harsher treatment because of her disability and/or gender, and (d) New York State provides less due process to attorneys seeking reinstatement than it does to members of other licensed professions;

(4) Plaintiff's First Amendment rights were violated because (a) the New York State courts failed to either substantively review plaintiff's application for reinstatement or grant plaintiff a judicial hearing in connection with her application for reinstatement, (b) plaintiff was punished for her political activities, associations, and free speech because the Second Department directed the CCF to consider plaintiff's involvement in a taxpayer lawsuit, and in its report, the CCF referenced plaintiff's support for a political candidate;

(5) New York State and its judicial branch violated Title II of the Americans with Disabilities Act ("ADA") by failing to make reasonable accommodations regarding the licensing, discipline, and reinstatement of attorneys with disabilities;

(6) Plaintiff has a right to relief from the actions of the New York State courts under Article 78 of New York's Civil Practice Law and Rules ("CPLR"), because the state courts act as administrative bodies in regards to matters of attorney licensing and discipline, and in plaintiff's case, their actions were arbitrary and capricious;

(7) Plaintiff is entitled to retroactive damages from New York State to the extent that the state waives its sovereign immunity and to damages under 42 U.S.C. § 1983 from the "John Doe" and "Jane Roe" defendants;

(8) "New York's judiciary has essentially decreed a species of martial law when it comes to . . . attorney discipline," and as such, attorneys in New York are denied a republican form of government, in violation of the Guaranty Clause of Article IV of the United States Constitution.

Plaintiff seeks $5 million dollars in compensatory and punitive damages, as well as variety of declaratory and injunctive relief.

Plaintiff specifically names two judges as defendants—Judith Kaye, the Chief Judge of New York State and A. Gail Prudenti, the Presiding Justice of the Second Department—and also seeks to name as defendants all other judges of the Second Department or Court of Appeals who were involved in an official capacity with plaintiff's disciplinary proceedings. Plaintiff also names the Grievance Committee and two of its employees, Gloria Bunze and Gary A. Casella, as well as anonymous defendants John Doe and Jane Roe, whom plaintiff defines as any clerical personnel, law secretaries, legal staff, or law clerks at the Second Department or Court of

Appeals who acted under color of state law to intentionally deprive plaintiff of her constitutional rights.

On January 8, 2008, defendants, represented by the New York State Office of Attorney General, moved to dismiss the amended complaint under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure on the grounds that the court lacks subject matter jurisdiction and that plaintiff has failed to state a claim upon which relief can be granted.

## II.     Discussion

### A.     Standards of Review

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a defendant may make a motion, in lieu of an answer, to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). On a motion to dismiss under Rule 12(b)(6), the court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in the plaintiff's favor. *See Dangler v. New York City Off Track Betting Corp.*, 193 F.3d 130, 138 (2d Cir. 1999). The Supreme Court has recently held that in order to survive a motion under Rule 12(b)(6), a plaintiff must plead enough facts to "state a claim to relief that is plausible on its face." *Bell Atlantic v. Twombly*, 127 S. Ct. 1955, 1968-69, 1974 (2007) (quoting *Conley*, 355 U.S. 41, 45-46 (1957)). Accordingly, a complaint cannot make merely "a formulaic recitation of the elements of a cause of action," but must allege facts that "raise a right of relief above the speculative level on the assumption that all allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic*, 127 S. Ct. at 1964-65 (citations omitted). The Second Circuit has interpreted the foregoing language to "requir[e] a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such

amplification is needed to render the claim *plausible*," rather than to mandate a "universal standard of heightened fact pleading." *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007).

When material outside the complaint is "presented to and not excluded by the court, the motion must be treated as one for summary judgment . . . and all parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002); Fed. R. Civ. P. 10(c). For the purposes of this rule, however, the complaint is deemed to include writings and documents attached to the complaint, referenced in the complaint, or integral to the complaint. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002); Fed. R. Civ. P. 10(c). Additionally, courts reviewing dismissal motions under Rule 12(b)(6) may permissibly take judicial notice of public documents, including the decisions and filings of other courts. *See Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007); *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir. 1991).

In evaluating a motion to dismiss under Rule 12(b)(1), the court accepts as true all factual allegations in the complaint but should not, however, draw inferences favorable to the party asserting jurisdiction. *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004) (citation omitted). "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F. 3d 110, 113 (2d Cir. 2000). "The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005). In determining the existence of subject matter jurisdiction, a district court may consider evidence outside the pleadings. *Arar v. Ashcroft*, 532 F.3d 157, 168 (2d Cir. 2008) (citing *Makarova*, 201 F.3d at 113). Subject matter

jurisdiction is a threshold issue, and thus, where a party moves to dismiss under both Rules 12(b)(1) and 12(b)(6), the court must address the 12(b)(1) motion first. *Sherman v. Black*, 510 F. Supp. 2d 193, 197 (E.D.N.Y. 2007) (citing *Rhulen Agency, Inc. v. Alabama Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990)).

B. <u>The Court's Jurisdiction to Consider Plaintiff's Claims</u>

*1. The Rooker-Feldman Doctrine*

Defendants assert that "[t]o the extent that plaintiff seeks to have this Court reverse or overturn the state court determinations relating to plaintiff's practice of law, such claims are barred by the *Rooker-Feldman* doctrine." (Def. Mem. at 10.) Pursuant to the *Rooker-Feldman* doctrine, "lower federal courts lack subject matter jurisdiction over a case if the exercise of jurisdiction over that case would result in the reversal or modification of a state court judgment," *Hachamovitch v. DeBuono,* 159 F.3d 687, 693 (2d Cir. 1998) (citing *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415-16 (1923); *Dist. of Colombia Court of Appeals v. Feldman*, 460 U.S. 462, 476 (1983)), or if the federal claim asserted is "inextricably intertwined" with an earlier state-court judgment, *Abrahams v. Appellate Div. of Supreme Court*, 473 F. Supp. 2d 550, 555 (S.D.N.Y. 2007) (citations omitted). Second Circuit and Supreme Court precedent instructs that four requirements must be met in order for the *Rooker-Feldman* doctrine to apply:

> First, the federal-court plaintiff must have lost in state court. Second, the plaintiff must "complain[ ] of injuries caused by [a] state-court judgment[.]" Third, the plaintiff must "invit[e] district court review and rejection of [that] judgment[ ]." Fourth, the state-court judgment must have been "rendered before the district court proceedings commenced"—i.e., *Rooker-Feldman* has no application to federal-court suits proceeding in parallel with ongoing state-court litigation.

*Hoblock v. Albany County Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)).

9

In the present case, plaintiff seeks review of the Second Department's and Court of Appeals' decisions denying her reinstatement to the practice of law, as well the subsequent decisions rejecting plaintiff's motions for reconsideration. "Disciplinary proceedings before the New York Appellate Division are judicial in nature and dismissal of an appeal from a disciplinary proceeding by the New York Court of Appeals is a final state court judgment." *Zimmerman v. Grievance Committee of Fifth Judicial Dist. of State of New York*, 726 F.2d 85, 86 (2d Cir. 1984) (citations omitted); *see also Mitchell v. Fishbein*, 377 F.3d 157, 171 (2d Cir. 2004) (noting that "[a] claim of a present right to admission to the bar of a state and a denial of that right is a controversy," the resolution of which constitutes a judicial action) (quoting *Feldman*, 460 U.S. at 478). Thus, plaintiff is asking this court to remedy the perceived injuries plaintiff has suffered as a result of state court judgments with which plaintiff disagrees. This is precisely the type of inquiry *Rooker-Feldman* proscribes. *See Campbell v. Greisberger*, 80 F.3d 703 (2d Cir. 2006). Accordingly, defendants' motion to dismiss for lack of subject matter jurisdiction is granted with respect to plaintiff's allegations that she was unlawfully denied timely reinstatement to the practice of law by the New York State courts.

2. *Judicial Immunity*

A number of plaintiff's claims are directed at the Honorable Judith Kaye, Chief Judge of New York State, the Honorable A. Gail Prudenti, Presiding Justice of the Second Department, and the other judicial officers of the Court of Appeals and the Second Department who were involved in plaintiff's disciplinary proceedings. All of these claims are directed at the judges and justices in their official capacities. It is well-settled that judges have absolute immunity from suits for damages arising out of judicial acts performed in their judicial capacities. *Mireles v. Waco*, 502 U.S. 9, 11 (1991); *Forrester v. White*, 484 U.S. 219, 225 (1988). The absolute

judicial immunity of a court and its members "is not overcome by allegations of bad faith or malice," and a judge cannot "be deprived of immunity because the action he took was in error . . . or was in excess of his authority." *Mireles*, 502 U.S. at 11, 13 (quotations and citations omitted). This immunity may be overcome only if the court is alleged to have taken nonjudicial actions or if the judicial actions taken were "in the complete absence of all jurisdiction." *Id.* at 11-12. By contrast, a judge is not protected under the doctrine of judicial immunity if the action being challenged is not judicial in nature, such as when the judge performs an administrative, legislative, or executive act. *Id.*; *Huminski v. Corsones*, 386 F.3d 116, 138 (2d Cir. 2004) (citing *Stump v. Sparkman*, 435 U.S. 349, 360 (1978); *Tucker v. Outwater*, 118 F.3d 930, 933 (2d Cir. 1997)). In order to determine whether a given act by a judge is a "judicial" one, the court must look to the nature and function of the act and to the expectation of the parties, in particular, the court must examine whether the act "is a function normally performed by a judge" and whether the parties "dealt with the judge in his judicial capacity." *Id.* (quoting *Stump,* 435 U.S. at 362).

Plaintiff argues that Judge Kaye, Justice Prudenti, and the other judges of the Court of Appeals and the Second Department are not protected from this lawsuit by the doctrine of judicial immunity because attorney disciplinary proceedings are essentially administrative in nature and thus, are not "judicial acts." This argument is without merit. New York law grants the Appellate Divisions and the Court of Appeals jurisdiction over matters of attorney discipline, N.Y. Jud. Law § 90; CPLR Art. 94; 22 NYCCRR § 691.4, and as discussed above, disciplinary proceedings such as those that are the subject of this litigation are "judicial acts," *see Mitchell*, 377 F.3d at 171; *Zimmerman*, 726 F.2d at 86. Accordingly, all of the judicial officers mentioned in plaintiff's complaint are shielded from liability in this action by the doctrine of absolute

judicial immunity. Plaintiff's claims with respect to those defendants are dismissed for lack of subject matter jurisdiction.

Likewise, plaintiff's claims against the various "John Doe" and "Jane Roe" defendants at the Second Department and the Court of Appeals must also be dismissed. To the extent that plaintiff claims that courthouse personnel—whether they be classified as legal secretaries, clerical staff, or law clerks—were involved in an official capacity with the decision-making process in plaintiff's proceedings, those personnel, like the judges they were assisting, are accorded immunity from suit. *See Rodriguez v. Weprin*, 116 F.3d 62, 66-67 (2d Cir. 1997); *Oliva v. Heller*, 839 F.2d 37, 39-40 (2d Cir. 1988).

   3. *Sovereign Immunity under the Eleventh Amendment*

Although the doctrine of *Rooker-Feldman* prevents the court from reviewing plaintiff's claim that the state courts violated her rights by unlawfully denying her timely reinstatement to the practice of law, that doctrine does not prevent the court from reviewing plaintiff's claim that the state's general rules and regulations governing reinstatement are unlawful. *See Campbell*, 80 F.3d at 707 (citing *Feldman*, 460 U.S. at 485-86). To the extent these latter types of claims seek money damages and are directed against New York State, its courts, and its officers acting in an official capacity, however, defendants argue they are barred by the Eleventh Amendment of the United States Constitution.

The Eleventh Amendment provides that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state." U.S. Const. amend. XI. Despite its text, which appears only to protect states from lawsuits brought by citizens of *another* state, the Supreme Court has long construed the Eleventh

Amendment to immunize non-consenting states from being subject to federal liability in suits brought by their own citizens. *Hans v. Louisiana*, 134 U.S. 1 (1890); *see also Garcia v. S.U.N.Y. Health Scis. Ctr.*, 280 F.3d 98, 107 (2d Cir. 2001) (citing *Bd. of Tr. of Univ. of Ala. v. Garrett,* 531 U.S. 356, 363 (2001); *Seminole Tribe of Fla. v. Florida,* 517 U.S. 44, 54 (1996)). Congress, however, may abrogate the state's Eleventh Amendment immunity "when it both unequivocally intends to do so and 'act[s] pursuant to a valid grant of constitutional authority.'" *Garcia*, 280 F.3d at 108 (quoting *Garrett*, 531 U.S. at 363).

In the present case, New York State has not consented to suit. Moreover, lawsuits against state officers acting their official capacity and lawsuits against state courts are considered to be lawsuits against the state. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 70-71 (1989); *Abrahams*, 473 F. Supp. 2d at 563 (citing *Kentucky v. Graham*, 473 U.S. 159, 169 (1985); *Al-Jundi v. Estate of Rockefeller*, 885 F.2d 1060, 1065 (2d Cir. 1989)). Thus, plaintiff's claims against New York State, its officers, and its courts may only proceed if they are brought pursuant to a valid Congressional abrogation of state immunity. Of all the statutory and constitutional provisions raised in plaintiff's complaint, only plaintiff's claim under Title II of the ADA provides an arguable basis for piercing New York State's immunity under the Eleventh Amendment. Thus, with the exception of plaintiff's allegations under the ADA, which are discussed below, all of plaintiff's claims for money damages against New York State, its courts, and its officers acting in an official capacity—i.e., Gloria Bunze and Gary L. Casella—are dismissed for lack of subject matter jurisdiction.

    C.    <u>Plaintiff's Claims under Title II of the ADA</u>

Plaintiff alleges that defendants violated Title II of the ADA by denying her "reasonable accommodation with regard to her professional license" and "failing to take an iterative dialog"

with her, thus "discriminat[ing] against her with regard to her license to practice law, including but not limited to her non-reinstatement to practice."[2] (Compl. ¶ 385.) As discussed above, plaintiff's claims are barred by the *Rooker-Feldman* doctrine to the extent they argue that the decisions of the New York State courts were wrongly decided. To the extent plaintiff brings a claim arguing that New York State's licensing and reinstatement procedures violate the ADA, that claim runs squarely up against the Eleventh Amendment and is barred unless brought pursuant to a valid Congressional abrogation of state sovereign immunity.

The Supreme Court has held that the ADA's text contains "an unequivocal expression of Congress's intent to abrogate state sovereign immunity." *United States v. Georgia*, 546 U.S. 151, 15 (2006) (citing 42 U.S.C. § 12202) ("A State shall not be immune under the eleventh amendment to the Constitution of the United States from an action in [a] Federal or State court of competent jurisdiction for a violation of this chapter."). What remains the subject of considerable debate—within the Second Circuit in particular—is the extent to which Section 5 of the Fourteenth Amendment of the United States Constitution provides Congress with the authority to give effect to this intent. *See, e.g.*, *Olson v. New York*, No. 04-CV-00419, 2007 WL 1029021 at *7 (E.D.N.Y. Mar. 30, 2007) (collecting recent district court decisions from within the Second Circuit). This debate stems from inconsistencies between the Second Circuit's decision in *Garcia v. S.U.N.Y. Health Sciences Center of Brooklyn* and the Supreme Court's subsequent decisions in *Tennessee v. Lane* and *United States v. Georgia*. Compare *Garcia*, 280 F.3d at 112 (holding that "a private suit for money damages under Title II of the ADA may only be maintained against a state if the plaintiff can establish that the Title II violation was motivated

---

[2] Plaintiff also alleges violations of the Rehabilitation Act, 29 U.S.C. § 794, and the New York State Human Rights Law, N.Y. Exec. Law § 290. These statutes are not discussed independently, however, because, for the purposes of evaluating plaintiff's claims, there are no relevant distinctions in what the statutes require. *See Weixel v. Bd. of Educ.*, 287 F.3d 138, 146 n. 6 (2d Cir. 2002); *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 332 n.1 (2d Cir. 2000).

by either discriminatory animus or ill will due to disability"), *with Georgia*, 546 U.S. at 159 (leaving open the possibility that a private suit for money damages under Title II of the ADA may be maintained against a state even if the alleged "misconduct violated Title II but did not violate the Fourteenth Amendment"). The court need not attempt to resolve this debate, however, because plaintiff has failed to state a claim that defendants violated the ADA. *See Goonewardena v. New York*, 475 F. Supp. 2d 310, 323 (S.D.N.Y. 2007) ("If there is no violation of Title II, then the *Georgia* analysis ends and the claim is dismissed on the ground that plaintiff has failed to state a claim rather than that the court lacks jurisdiction due to sovereign immunity.")

In order to establish a violation under the ADA, plaintiff must demonstrate that (1) plaintiff is a "qualified individual" with a disability; (2) defendants are subject to the ADA; and (3) plaintiff was "denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or were otherwise discriminated against by defendants, by reason of plaintiff['s] disabilit[y]." *Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003). Plaintiff has failed to provide the court with enough facts to raise a plausible claim that her multiple sclerosis placed her at a disadvantage throughout the disciplinary proceedings. As such, plaintiff's claims under the ADA and related statutes must be dismissed for failure to state a claim for which relief can be granted.

    D.    <u>Plaintiff's Claim under the Guaranty Clause</u>

Plaintiff also claims a violation of the Guaranty Clause of Article IV of the United States Constitution. The Guaranty Clause provides that "[t]he United States shall guarantee to every state in this union a republican form of government, and shall protect each of them against invasion; and on application of the legislature, or of the executive (when the legislature cannot be

convened) against domestic violence." U.S. Const. art. IV, § 4. After carefully reviewing the allegations in plaintiff's complaint, the court finds that plaintiff has failed to demonstrate the absence of a republican form of government in New York State. Accordingly, plaintiff's claim under the Guaranty Clause is dismissed pursuant to Rule 12(b)(6).

      E.    <u>Plaintiff's Remaining Claims</u>

The court has considered plaintiff's claims under the Equal Protection and Due Process Clauses of the Fourteenth Amendment, as well as plaintiff's claims under the Petition Clause of the First Amendment. To the extent these claims seek declaratory or injunctive relief, and thus are permitted by the Eleventh Amendment, the court finds them lacking in factual support and based upon erroneous interpretations of the law. Accordingly, these claims are also dismissed pursuant to Rule 12(b)(6).

**III.   Conclusion**

For the reasons set forth above, defendant's motion to dismiss the complaint is granted in its entirety.

SO ORDERED

DATED:    Brooklyn, New York
              August 13, 2008

                                                                                   /s/
                                                              DORA L. IRIZARRY
                                           United States District Judge